GRIFFIN, Chief Judge,
concurring specially.
I write only to address the dissent, with which I disagree. The dissent takes the position that it was reversible error for the lower court to refuse to allow appellant to cross-examine the state’s expert using appraisals the state’s expert, Allen, had never seen. Allen had previously testified that he had been told by the School Board that the parcels had been appraised using a highest and best use of commercial. He also testified that he had never reviewed the appraisals. The following exchange between counsel for appellant and Mr. Allen ensued:
Q. Did you have the opportunity to review the appraisals that were done by the City of Winter Springs when it acquired your sale number three and your sale number ten?
A. I did not.
Q. So that wasn’t part of your verification process.
A. That was just information that wasn’t privy to me;
Q. Well, wouldn’t they be a public record, those appraisals after the acquisition?
A. Might be. Probably would be. I did not see them, though.
Q. So you didn’t review them.
A. I did not.
Q. I have here a copy of the appraisal done by Pardue, Heid, Church, Smith and Waller. Are you familiar with that firm?
A. I am.
Q. And I would ask you to take an opportunity to look at that appraisal that was done on L-10 and see if you can tell from that what the appraiser used as the highest and best use for L-10.
A. It says the highest and best use of the property is for residential development in here on page — well, it’s actually a summary of the sale of facts and value estimate of 350,000, and I call your attention they paid 700 some thousand for the property, so—
At this point, counsel for the state interposed an objection:
MR. GENDIZER: Objection at this time, Your Honor. This is in the form of impeachment. Mr. Allen is not familiar with the appraisals.
THE COURT: Sustained.
MR. HARRIS: It’s not' impeachment, Your Honor. It has nothing to do with impeachment at all.
THE COURT: Is that document in evidence?
MR. HARRIS: It has to do with his knowledge of the conditions of the sale he’s testified about. It’s not impeachment at all.
THE COURT: Other appraiser’s work. I’ll sustain the objection.
MR. HARRIS: The highest — .
THE COURT: Mr. Harris.
MR. HARRIS: Okay.
Q. What was the purchase price on your sale three?
A. $794,600.
Q. What was the purchase price on sale ten?
A. $350,000.
Q. And the appraisal that you were looking at was sale ten?
MR. GENDIZER: Objection again, Your Honor, irrelevant.
THE COURT: I’m going to sustain it.
The jury was then excused, and counsel for appellant argued:
*293 MR. HARRIS: Your Honor, if I might share with you where we’re going with this. I am not questioning him to challenge him on some other appraisers work. There are two appraisals and the only reason that there’s any. confusion here is because I got mentally confused on sale three and sale ten, but let me tell you what we’re showing here.
On sale three, there was an appraisal made by the City of Altamonte Springs that declared — the one that he’s using; it’s a comparable — that the highest and best use was residential. So in the mind of the purchaser, the City of Altamonte Springs based on that appraisal, the highest and best use of this property was residential. And the price, the appraised value was $795,000. I’ll get this straight in just a minute. Arid the actual price was — the purchase price, appraised price was 795. The purchase was price [sic] 794,600. They bought it $400 cheaper than they appraised it, residential.
So it follows, based on everything that he’s testified to this point, that he didn’t do a thorough enough job to investigate that sale and that that sale was based on residential uses and not commercial uses that he’s already jumped up and down a dozen times before the jury about. So he’s dead wrong. He’s not correct. It’s not a comparable sale at all because he’s already admitted you don’t look to evaluate a commercial to residential, and he’s already admitted to me in the minds of the purchaser and the seller is what counts in this situation, and here’s an appraisal and here’s a purchase price that is $400 cheaper.
Then on Parcel L-10, which is the other one to the city, the scenario is exactly the same. The appraisals say the highest and best use is residential and that the value is $310,000 and that’s exactly what the sale price was.
So he is using with those — he has got a body of sales here, and the only way I can develop this — I can’t — an objection would have been futile, Your Honor, for me to stand up and say I object, predicate or something like that. I mean, you would have overruled it in a second and it was better — I mean or forced me to explain it. So the only choice I had from a trial strategy is to bring this out in this line of questioning and then I’m gonna move to strike this witness’ testimony.
THE COURT: Through the appraisal of Pardue, Church.
MR. HARRIS: No, no, not through the appraisal of Pardue, Church. That has nothing to do with -this issue at all.
THE COURT: You- keep referring to it.
MR. HARRIS: Your Honor, I’m referring to it because one of the elements of my motion to strike this witness’ testimony and only one is he hasn’t confirmed the sales properly and legally with these taking authorities and he has in fact used a sale that was within the contemplation of the parties, as witnessed by all of this stuff, was residential, not that they’re right or -wrong. I’m not saying that those guys are right or that he’s wrong. I’m saying that the parties contemplated it. There is no' right. It’s like the weather. It’s not right or wrong. It just is. •
THE COURT: You want the appraisal in to assist you in showing what the parties contemplated.
MR. HARRIS: That’s right. That’s the only reason that I’m asking him those questions.
MR. GENDIZER: Your Honor, my position is that the appraisals are hearsay, they are irrelevant here, they were not listed as exhibits in this trial. In fact, this is the first time I’ve heard of them , is today.
The witness has testified that he has .confirmed the sales with the school board and the other purchasers. He’s been cross-examined at length on who else he may or may not have talked to and Mr. Harris has made that point. These appraisals, right 'or wrong, don’t tell us what the sellers were thinking when they sold the property. They may or may not say what the appraiser that did the appraisal work was doing, but it *294 doesn’t tell us the state or [sic] mind of the buyer or seller.
THE COURT: One more shot.
MR. HARRIS: Mr. Gendizer’s argument itself explains it’s a proper area to go into. He stood up and bald-faced said these were arms lengths [sic] transactions and I’m positive of it, and all I’m doing right now is taking him apart on that as a good lawyer should.
THE COURT: For the sake of argument, let’s assume that Mr. Allen came in here and flagrantly lied and flagrantly lied. We’re not saying you did, Mr. Allen. We’re having a conversation. Please don’t think I’m saying that.
MR. ALLEN: Not at'all. I don’t, Your Honor.
THE COURT:' Let’s just say that’s what he did and now you want to use the appraisal to show an intention of mind. That’s what you’re saying.
MR. HARRIS: I’m not saying that, Your Honor.
THE COURT: Give me another reason.
MR. HARRIS:. Let me try to take you through it very carefully. What he has said is that it’s very important for an appraiser who is doing his job to get as much information that he can, and that I determined by getting as much information as I can that this sale, sale number three, was in fact a commercial sale and therefore I can compare that sale to the property, subject property. Since he said that, I now have the right to go behind that in cross examination to then ask him about who he talked to and who he didn’t talk to, and I also say here’s a document that is a public document— he’s admitted that — did you look at that. No, I didn’t. Doesn’t that say that the property was bought and sold based on residential use. Yes, it does. Isn’t the value in that 350,000? Yes, it is. Wasn’t that the same as the purchase price? Yes, it is. I’m through. But I think I’ve got a right to do at lease [sic] that. I’m not gonna say they’re right, they’re wrong, you’re right, anybody is right or wrong.
THE COURT: I’m sustaining the objection and there’s a number of reasons for sustaining the objection. I’m sustaining the objection. Relevancy, hearsay, not an opportunity to cross-examine, doesn’t establish intention of mind, document wasn’t listed on the pretrial.
MR. HARRIS: Your Honor, this is cross examination. I don’t have to list a document on pretrial.
THE COURT: Mr. Harris, our pretrial says all documents listed. We don’t have trial by ambush. That’s years ago. Cowboy days are over in Seminole County a long time ago.
Counsel then made a proffer to the court as follows:
MR. HARRIS: Your Honor, what I would seek to do in a proffer with this witness is to inquire of him, as I believe I did, do the extent that he had done confirmation of the sales and establish that, he had already established, that sales to public bodies have to have appraisals and we will know that those are readily available and I was gonna ask him, as I did, did he get those and he didn’t, so I have them to him and he looked at them and I would have asked him merely to do two things. One is to establish that on sale three, that the highest and best use — on sale three and sale ten, the two City of Altamonte Springs, that the highest and best use designated by the appraisal that was used as a foundation to purchase those two pieces of property by the city called out a residential highest and best use, that the appraisal on L-ll by the school board, which I think is already in without objection, but I want to add that it is in without objection, had indicated that the property in the after improvement situation was gonna lose its frontage and that on sales three and sales ten, that the purchase price which he already knew because it was a comparable sale in his approach was exactly $350,000 on ten, exactly the amount of the appraisal, and that the purchase price — which called out residential use, and that the purchase price on L-13 was $400 less than the appraised value which *295 called out residential property, and having done that, Your Honor, I think that imparts, and I got most of that in but I didn’t quite get it all in, and there was no effort in that proffer to take the appraisals and have him criticize them, evaluate them or do anything else because what he — when he’s using a comparable sale, he’s got to get in the mind of the buyer or the seller. If it’s between you and me, it’s probably arms [sic] length, but if it’s between me and my son, you’ve got to get into our heads and find out if it’s an arms [sic] length. It can be or it may not be and that when you’ve got an entity that has the power of eminent domain, it can be or it may not be and that he didn’t do what he has to do. He stood up there and baldfaced said those were arms lengths [sic] transactions. You will notice no detail, no explanation in his appraisal about it, no explanation in his testimony about it, and what I was doing with that line of questioning was pointing out that he was dead wrong, that in the mind of the seller, because it was an appraisal calling out a residential use, it was a residential sale, and he’s already testified that’s not proper. So I got about 75 percent there but I didn’t get all the way there and it’s probably my fault for getting mixed up with the numbers and I’m sorry but I wasn’t using those documents in any way to impeach anybody really,, other than to show that he had not done what he said he had done in the sense of doing his homework, that these were,— he hasn’t closed the door that these were arms lengths [sic] transactions. He hasn’t done what’s necessary in order to establish that. And I was simply using those public documents that are in the public record and readily available and should have been looked at by any. appraiser using those sales. It should have been part of his confirmation process and I got prevented from doing so because of the ruling and I am not — Your Honor, I don’t try eases by ambush. It never occurred to me in the least that a document that I wasn’t submitting into evidence that I didn’t intend to use into -evidence and was a public document would any way be anything that I would have to, you know, reveal, and if I misread the order, then I humbly apologize to the court.
The question .posed in this case is not whether the appraisals were admissible but whether it was reversible error to refuse to permit appellant to cross-examine Mr. Allen on the document beyond what was allowed. The appraisals were not in evidence, were not even marked for identification and are not part of the record. The witness was handed a document he had never seen before, could not identify and whose contents he did not know. All of this he readily admitted. Mr. Allen even testified that the appraisal he was handed contemplated a residential use of the comparable property. If the purpose of the examination was to show the appraisals had a different content than that-assumed by Mr. Allen and that Mr. Allen’s appraisal was therefore defective, the appellant had only to offer the appraisals in evidence with proper ■ authentication during their case. Counsel even acknowledged he got “most” of what he wanted in cross-examination. On the cold record, appellee’s explanation of the reasons for the effort to get the witness to testify to the contents of the document are not clear, but appellant’s position that the purpose was not for impeachment was emphatic.